## LEWYN v. PATHÉ EXCHANGE, Inc.

Circuit Court of Appeals, Third Circuit.
May 14, 1929.

Rehearing Denied Oct. 31, 1929.

No. 3914.

Benj. P. De Witt, of New York City (Sidney Pepper, of New York City, of counsel), for appellant.

Coudert Bros., of New York City (Frederic R. Coudert, Jr., of New York City, and John J. Treacy, of Jersey City, N. J., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. The plaintiff, Louis Lewyn, brought this action against Pathé Exchange, Inc., hereinafter referred to as Pathé, for damages for alleged conversion. On February 16, 1926, Lewyn had entered into a contract with Associated Exhibitors, Inc., a corporation, hereinafter referred to as Associated, for the production, financing, and exploitation of a feature photoplay entitled "Carnival Girl," the feature unit to consist of two original negatives and one positive print. Lewyn

was to produce it, Associated to provide the cost of production, of manufacture of prints, and of all other expenses of distribution, and to be reimbursed only from the proceeds of exploitation, if any. Associated was to distribute the picture throughout the world for a period of ten years; to have positive prints made from the negatives; to retain 40 per cent. of the rentals; and to pay the remaining 60 per cent. to Lewyn after reimbursing itself for the cost of the prints and other charges; to advance to Lewyn, on account of his share of the rentals, $30,000 as follows: $15,000 on the delivery of the two negatives and the print, and the balance of $15,000 in three installments of $5,000 each payable six, nine, and twelve months, respectively, after such delivery.

The contract contained the following provisions:

"1(j). The aforesaid positive prints, together with all positive prints manufactured by Associated from the negatives of each photoplay shall be and remain the absolute property of Associated, but all positive prints of said photoplay shall be scrapped or destroyed immediately upon the withdrawal of same from circulation. * * *

"10. The Producer hereby agrees that each feature unit deliverable to Associated hereunder shall be free and clear of and from any claim, lien, mortgage or other encumbrance of any kind or character whatsoever, prior to the lien hereby granted to Associated, and that Associated shall have and is hereby granted a first lien upon each such feature unit and upon all negatives and prints of each photoplay coming into its possession and each and every part thereof, as security for the advances to be made upon and against the respective production; that such lien shall attach and come into being forthwith upon the delivery of the respective feature unit to the carrier for transportation to Associated, and shall continue as a first and prior lien or encumbrance upon the respective photoplay from such date until the expiration of the period for which the rights in the respective photoplay are hereby granted to Associated, or the repayment of such advances in full, whichever shall first occur; and the Producer hereby agrees that Associated shall have the right to pledge any of the photoplays deliverable hereunder to third persons (including corporations) as security for any advances made by such persons, on account of such photoplay or pho-

toplays for positive prints, advertising or otherwise, pursuant to this agreement, and that if and when such advances are made by such third persons, the lien hereby granted to Associated shall be deemed to be granted to the persons making the advances as fully as if such third persons were parties to this agreement. * * *

"18. If Associated shall violate any of the provisions of this contract, then, at the option of the Producer, this agreement shall immediately terminate and expire upon ten (10) days' written notice to Associated unless within said ten (10) days after notice Associated remedies said default; or if Associated should file a petition in bankruptcy, or be adjudged a bankrupt, or take advantage of the insolvency laws of any State, Territory or country, or in the event of the termination of its corporate existence, or should its assets be sold under any order, judgment or decree, or a receiver be appointed of its property, then upon the happening of any one or more of such events and such contingency continuing ten (10) days after notice by the Producer that he intends to cancel this agreement, the Producer may, at his option, terminate this agreement by giving ten (10) days' notice of his intention so to do to Associated by personal service thereof upon any one of its officers, or by telegraph addressed to its New York office, whereupon this agreement shall at the expiration of said ten (10) day period be terminated and ended, anything in this agreement to the contrary notwithstanding. Upon the termination of this agreement upon any ground or in any manner aforesaid, any and all rights herein granted to Associated and the copyrights of the photoplays shall immediately revert to and become the sole and absolute property of the Producer, and the Producer may then seize and take, with or without the order of any court, wherever found, any and all negatives theretofore furnished by the Producer to Associated and the prints made therefrom, upon payment to Associated or the lienor of the balance due of the amount advanced by or for account of Associated hereunder which is then secured by any lien."

Under the contract, the sole and exclusive right to obtain copyright on the photoplays was granted to Associated. After the delivery of the feature unit to Associated, it commenced distribution by means of prints manufactured at its request by Pathé. In October, 1926, Associated being unable to proceed with distribution, Pathé, having possession of the negatives and prints, continued the distribution commenced by Associated under existing Associated contracts as well as under new ones, and provided prints for such exhibition. At that time the picture was subject to a lien of the trustees of the W. E. S. Trust Account and a lien of Pathé for advances made to Associated in attempting to carry out its part of the contract. Pathé, in order to protect its lien, proceeded to produce and exploit the picture. Lewyn thereupon brought this suit against Pathé for damages for conversion.

In order to maintain this action, the burden was put upon Lewyn of proving ownership. The contention on his behalf was that, although paragraph 1(j) of the contract purported to vest absolute ownership in Associated, yet the provision of paragraph 10 granting to Associated a first lien upon each feature unit and upon all negatives and prints coming into its possession as security for advances rendered those terms of the contract ambiguous, and therefore it was a question for the determination of the jury whether Lewyn had vested title in Associated, or Associated had merely been granted a lien and the title still remained in Lewyn. He therefore introduced evidence for the purpose of showing that the parties had construed the contract in accordance with his contention in certain negotiations between representatives of Associated and of Pathé with Lewyn or his representatives, during which the former offered to enter into a contract under the terms of which Pathé was to print, exploit, and distribute the picture as a substitute for performance by Associated. In that proposed contract offered in evidence, it was recited in the inducement thereof that Associated had returned the prints to Lewyn. It was contended on behalf of Lewyn that this was competent evidence to show a construction put upon the original contract by the parties conceding ownership in Lewyn and that its construction was, therefore, for the jury upon the ground that the contract itself was ambiguous.

The learned trial judge held that Lewyn, not having availed himself of his remedy under paragraph 18 for alleged violation of the contract by Associated by giving ten days' notice of his intention to terminate the contract and by seizing the negatives and prints and paying to Associated or other lienors the balances of the amounts advanced, secured by liens, had not estab-

132

lished his ownership, and a verdict was thereupon directed for the defendant, Pathé.

 The evidence clearly shows that Lewyn had ample notice of the failure of Associated to proceed with the distribution of the picture and of the outlay through advances made by the W. E. S. trustees and by Pathé; that he not only did not exercise his option to terminate the contract, but that he steadfastly refused to do so when fully informed of the facts. Having notice of facts under which he could have ascertained his rights and having done nothing, the only construction which could reasonably be put upon his actions was that he had elected to continue the contract as a subsisting one.

We cannot sustain the contention of the appellant of such ambiguity in the terms of the contract as to require its construction to be submitted to the jury. Upon consideration of the whole contract, we think the only reasonable construction to be placed upon it is that it represents a joint venture for the purposes of which, in order that copyright might be obtained by Associated and that it and others making advances might be secured, absolute ownership was vested in it, subject, however, to be divested under paragraph 18 upon the cancellation of the contract, upon notice, for cause. And, in order that, upon seizure of the negatives and prints by Lewyn, payment might be secured to Associated or other lienors of the balances due of the amounts advanced by it or them, then secured by any lien, the ownership in Associated being then divested, the lien granted to it was clearly intended to secure it in case of the reversion to Lewyn of the rights theretofore granted to Associated. The terms of the contract, as thus construed, are plain and reasonable.

Turning to the testimony concerning the proposed contract reciting that Associated had turned back to Lewyn the motion picture subjects, this was not the recital of an accomplished fact, but merely a statement of what Associated and Pathé were willing to do or have done if Lewyn accepted the offer of a new contract. The recital was not, therefore, evidence of a construction placed by the parties upon the existing contract, but merely evidence of what Associated was willing to do if a new contract was entered into.

We conclude, therefore, that the learned trial judge rightly directed a verdict for the defendant upon the ground that Lewyn had not sustained the burden of proof of ownership, having never given notice of the termination of the contract in accordance with its terms after he had notice that Associated was in financial difficulties, and notice of the advances made and expenses incurred by Associated, by the W. E. S. trustees, and by Pathé.

Judgment affirmed.